Filed 1/7/22  Kaae v. Scott Valley Unified School District CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| KYLE KAAE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SCOTT VALLEY UNIFIED SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | C089962 <br><br> (Super. Ct. No. SCCVCVCV2016862) |

Plaintiff Kyle Kaae sued defendant Scott Valley Unified School District (the District) for numerous claims, including discrimination based on disability.  The trial court granted the District summary judgment.  Kaae challenges that ruling on appeal, contending there were triable issues of fact as to:  (1) whether he could have performed other available District jobs with or without accommodation; (2) whether the District failed to make reasonable accommodations; (3) whether the District failed to engage in a timely, good faith, interactive process with Kaae to determine effective, reasonable accommodations; (4) whether the District failed to take all reasonable steps to prevent

1

discrimination and harassment from occurring; (5) whether the District retaliated against Kaae for whistleblowing; and (6) whether there was a violation of Government Code section 12945.2. (Statutory section citations are to the Government Code unless otherwise stated.)

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

*The Second Amended Complaint*

As pertinent to this appeal, in his second amended complaint, Kaae brought suit against the District for discrimination under Government Code section 12940, subdivisions (a), (m), (n), and (k), based on disability as well as for retaliation for whistleblowing under Labor Code section 1102.5, and retaliation for requesting family medical leave under Government Code section 12945.2, subdivision (l)(1). (We note this is section 12945.2, subdivision (k)(1) in the most recent amendment to the statute.)

Kaae alleged that he began working for the District in 2009, and by 2012, he had held two positions: Maintenance and Operations Supervisor and Lead Maintenance Worker.

In 2014 he notified the District superintendent that the public water supplies could be contaminated because the school irrigation system lacked backflow valves. As alleged, the superintendent ignored this, and was "perturbed" that Kaae kept raising it.

On January 27, 2015, Kaae injured his back while working and was taken off work by his doctor. Kaae returned to work on February 4th. But on February 10th, he reinjured his back and was again taken off work by his doctor. Kaae returned to work on March 10th, but on March 20th, he was taken off work again.

Kaae alleged that his injuries were due to working as a lead maintenance worker, but he was nevertheless able to continue working as a supervisor, which was a desk job. The District, however, did not offer to let him continue to work as a supervisor.

Kaae also alleged that between January 2015 and March 2016, he requested an accommodation for his back injury to continue working. This included a request to continue working the supervisor position. But the District never responded to his requests. Nor did it engage in the interactive process with him.

The complaint also averred that on February 9, 2016, the District sent Kaae a letter telling him he would be laid off, effective March 21, 2016. The letter said the District's Board of Trustees had decided to eliminate the supervisor position. Kaae alleged this was a pretext for getting rid of him. He also alleged that he remains unemployed but is able to perform the duties of a supervisor.

### *The District's Motion for Summary Judgment*

The District moved for summary judgment, averring it had legitimate reasons for the adverse action. The supervisor position was eliminated because the duties were absorbed by the superintendent position. And Kaae had been moved to the rehire list after his paid and unpaid leave was exhausted on his lead maintenance position.

Further, the District had engaged in the interactive process with him after his injuries, and he was fully accommodated up until the point that his doctor took him off all work on March 25, 2015. On that day, Kaae had a meeting with the District and provided a no work order from his doctor. From then until the present, Kaae's doctor expected the District to follow the no work order and assign no work to Kaae. The District added that even if it had failed to engage in the interactive process, it can only be liable if a reasonable accommodation was available, and Kaae's doctor testified that Kaae was to do no work.

The motion attached several deposition transcripts, including a transcript of Kaae's deposition, the deposition of the District human resources director, and the deposition of Kaae's doctor.

3

*Kaae's Deposition*

In his deposition, Kaae testified that in March of 2015, he met with the superintendent and reported that his back was in bad shape, according to his doctor. He said he was not sure if he could continue filling the maintenance position and asked to fulfill just the parttime supervisor position. Kaae testified there was no response to his request. But Kaae also testified that between January 2015 and March 25th, when he left work, the District always provided him with the help and accommodations he requested. And he agreed that he had had an interactive process with the District in March 2015, when he came back with limitations and talked to the District about how to accommodate his restrictions. He also agreed that "it doesn't make any difference what positions are available or not available if you don't have a doctor's release."

As to his layoff in January 2016, Kaae testified to receiving a letter stating that for 39 months he would have the right to return to any vacancy within his former classification when he was medically able to resume the classification's duties. The letter also said that: "It is your responsibility to inform the District when you are medically able to return to work in your previous classification," and that District policy required a medical certification of fitness to return. Kaae testified that he had not obtained a medical certification of fitness to return, and since receiving the letter, he had not notified the District that he was medically able to return.

Kaae also testified that the supervisor position had been eliminated due to lack of funds and work, and that the superintendent had assumed those duties.

*The District Human Resources Director's Deposition*

The District's human resources director explained that as to the termination of the supervisor position, there had been a reorganization plan with the aim of providing full-time principals at each school site and a fulltime superintendent. Part of that plan

4

involved the superintendent assuming more responsibilities, including overseeing maintenance and operations.

The human resources director also testified that the District had accommodated Kaae when he was in and out of work with restrictions, but, after his doctor took him off work on March 25, 2015, she did not meet with him for an interactive process because he was then off work: "[W]hy would we push it, as an employer, onto the employee or call the doctor to question that? That was the information shared with me from Mr. Kaae. The doctor wanted him off work."

### *Kaae's Doctor's Deposition*

Kaae's doctor testified that Kaae had injured his back lifting heavy boxes. The doctor took him off work on January 27, 2015, intending that Kaae do no work—at work or at home. He was off work for a week or two before returning to work with restrictions. But his condition worsened, and by March he was taken off work again.

On March 25, 2015, Kaae reported severe back pain and the doctor again took him off work. The doctor testified that having been taken off work, Kaae should not be making phone calls, sending emails, or doing paperwork. The doctor faxed a note to that effect to the District. The following month, and every month after that for two and a half years, the doctor wrote notes to the District that Kaae was off work and should do no work for the District. He testified that he expected the District to honor that by assigning no work, including phone calls, e-mails, interviews, or paperwork.

The doctor believed that Kaae would not get better if he continued trying to work. Still, he had hoped that with "a month or two or three" off work, he would get better and get back to work. But "as it's worked out, he's been off ever since."

The doctor was asked how he would respond, "if Mr. Kaae, sometime after March 25th, 2015 . . . had said, 'Well, you know, I'd really like to go back and work part-time . . . .' "

The doctor testified: "We would have probably had a discussion, and he might have convinced me to put him back to some light duty, and I might have convinced him that he just needs to stay home and recover." He added, "I think we had that discussion. It's been a few years," and, "there were times when he would improve after he got the [caudal] injection, he's improved. And, luckily, I didn't put him back to work because then he got worse again."

The doctor also testified—with the caveat that he was waiting for a declaration from a doctor who ordered a nerve conduction study and computed tomography (CT) scan—that, "I believe [Kaae] is permanent and stationary at this point." The deposition was taken in July 2017.

### *Kaae's Opposition to the Summary Judgment Motion*

Kaae opposed the motion, arguing the District had failed to engage in the interactive process with him in March 2015, and failed to provide reasonable accommodations to allow him to work the supervisor position. He argued that while he could no longer perform the lead maintenance worker position, he could perform the supervisor position with or without accommodation. He averred numerous accommodations were available including working from home, a leave of absence, job restructuring, and modified work schedules. But the District never asked him to go back to his doctor for more information, never provided him with descriptions of available jobs, and never asked for clarification as to what work he might be able to perform.

Kaae attached a declaration, wherein he wrote: "I spoke to [the superintendent] at least twice regarding a proposal to only work the Maintenance Operations Supervisor position on a permanent basis as a reasonable accommodation. The first time, in March 2015, [the superintendent] did not respond to my email. The second time that I followed up and again requested the accommodation, there [the superintendent] stated that he was 'thinking about it.' [The superintendent] never did get back to me regarding the request.

6

No interactive process was held and no accommodation [was] made or even attempted by the [District]."

The declaration also stated: "If the [District] had agreed to accommodate me, I would have gone back to my physician . . . and requested that he release me to work for the Maintenance Operations Supervisor position. [My doctor] has told me that he would have released me in that manner, if the [District] would have accommodated me."

As to the elimination of the supervisor position, the declaration also stated that there was no lack of funds or work. But according to the order granting summary judgment, the trial court subsequently sustained the District's objection to this statement, based on foundation and lack of personal knowledge.

Kaae also wrote that he was laid off due to his whistleblowing activity of reporting a potentially dangerous situation with the water system at two schools. He wrote that in 2017, while no longer working for the District, he filed a complaint with the county regarding the drinking water issue. The City of Etna ultimately agreed and recommended system updates to avoid contamination. Kaae attached a letter from the City of Etna's public works director, recommending that double check valve assemblies be installed on drinking fountains connected to irrigation lines, to avoid backflow.

Finally, Kaae wrote that despite his request for Family Medical Leave/California's Family Rights Act leave (FML/CFRA) in early 2016, his leave was not established "appropriately." And in March he received a layoff letter, while he should have been on FML/CFRA leave.

*The District's Reply*

In reply, the District argued it had shown it had engaged in the interactive process with Kaae several times and fully accommodated him when he was released to work with restrictions. But after March 25, 2015, no accommodation was possible because Kaae's doctor wanted him off work completely. And since the doctor's notes did not allow the

7

possibility of Kaae working, legally, there was no need to hold additional interactive meetings after March 25, 2015.

The District maintained that Kaae's claim that his doctor would have released him to return to work after March 25, 2015, was false. The District averred that Kaae's doctor never stated this in a deposition or declaration, and it was only in Kaae's "self-serving" and hearsay declaration that this point was made. The District moved to strike that statement as hearsay.

The District also noted that Kaae's response to the District's separate statement did not dispute that, after March 25, 2015, Kaae's doctor did not want him working at all, and that Kaae had not improved and has been off work, on his doctor's orders, ever since.

*Kaae's Supplemental Brief*

At a hearing on the Summary Judgment motion, Kaae was asked to provide evidence that he was eligible for and able to perform an available District job, beginning in March 2015. He was then granted a continuance to conduct additional discovery on job positions potentially available at the District.

Kaae thereafter filed a supplemental brief, averring that there were at least five District positions available that he was eligible for and that he could perform with or without accommodation. He explained that he had reviewed a partial list of open District positions, and he was qualified for five of them: Maintenance Operations Manager (his prior position), After School Program Assistant, Delivery Worker, Food Service Worker, and Delivery Worker/Food Service Worker.

He also wrote that he took descriptions of these positions to his doctor who said (as per the doctor's declaration): "Based on my review and knowledge of these position descriptions, I believe that Mr. Kaae would have been physically capable of performing the duties of each of these positions, with, or without accommodations in March 2015."

8

It continued: "I would have released him to work at any of these positions, with or without accommodations, had I known that they were available."

*The District's Reply to Kaae's Supplemental Brief*

The District replied that the doctor's declaration cited "March 2015" and therefore could only refer to the period before March 25, 2015, when Kaae was taken off work completely.

The trial court, thereafter, allowed more time for discovery to determine whether Kaae could perform work, with or without reasonable accommodations. The parties then took a new deposition of Kaae's doctor.

*Kaae's Second Supplemental Brief*

Kaae filed a second supplemental brief, acknowledging that the District had made minimal accommodation for him before March 25, 2015. But the problem, he argued, occurred going forward, when the District failed to engage in the interactive process with him. He added that his doctor commonly modifies restrictions, citing the new deposition, wherein his doctor explained: "[I]t is not uncommon that I modify my restrictions either from 'off' to 'modified,' or even modify a weight or add a restriction about how a person can walk or stand after a discussion with either an employer or a work comp company."

Kaae also averred that his doctor "clinched the case" for him, when he was asked, "Post March 25, 2015, depending on the conditions, depending on what's available, depending on what the employer was able to do, it's possible his work—he could have been changed from an off-work to modified work duty, at least for some period of time?" His doctor replied "Yes." The brief omitted the doctor's full answer: "Yes. If I add, depending on his medical condition, as well."

The District replied that in the most recent deposition, Kaae's doctor made clear that from March 25, 2015 to March 2016, it was medically necessary that Kaae do no work. The doctor also explained that when he signed the declaration that Kaae could perform the available District jobs, he interpreted " 'with or without accommodations' " to include accommodations such as going to work and doing nothing.

The doctor explained: "[A]s I read the declaration, I believe it said 'could.' Not could he perform this job, but could he perform a job with modifications. And, again, could he have gone to work and gotten paid for absolutely doing nothing and modifying his activity at will? He could have. [¶] So I interpreted that could he have performed any kind of job? And I believe that's why I signed it." He added, "just about anybody can do just about anything with enough accommodation," and he agreed he was thinking along the lines of, "[s]ure we can wheel someone's hospital bed into a school district[.]" The doctor also explained: "I have had injured workers get paid to go to work and do nothing because the employers understand the significance of taking an injured worker off of work."

When the District's counsel clarified that there's a difference between accommodation, or not doing any work, and "reasonable accommodations," modifications that allow the employee to do some work and that do not significantly impact the work or the employees performance, the doctor testified that as to the jobs in the declaration, "I don't think he could perform these with what I would consider to be reasonable accommodations." He also confirmed that from March 25, 2015 into 2017, he felt Kaae should not do any work for the District, including light duty or modified work.

He also testified that had he felt Kaae could have returned with reasonable accommodations after March 25, 2015, he would have written a note to that effect. But

10

he did not, adding, "my memory is that I didn't think he could work, and I believe my chart notes reflect that."

*The Trial Court's Ruling*

The trial court granted summary judgment, adopting the District's proposed order. As to the discrimination and retaliation claims, the order concluded that the District had met its burden of showing a valid, nondiscriminatory reason for the employer's action, shifting the burden to Kaae. It found that Kaae had lost his supervisor position due to a reorganization plan, noting Kaae's declaration that there was no lack of work or funds had been stricken for lack of foundation and personal knowledge. The trial court sustained the District's hearsay objection to Kaae's declaration that his doctor would have released him had the District offered to accommodate him.

The trial court held Kaae failed to offer substantial evidence that the District's stated reasons for the layoff were untrue or that it had acted with discriminatory animus. It noted, Kaae had offered no evidence linking his drinking water whistleblower complaint in 2014 with the 2016 layoff.

As to the accommodation and interactive process claims, the court found the District had not failed to engage in the interactive process after March 25, 2015, because Kaae's doctor's medical notes stated, "no work." Further, the doctor had testified it was medically necessary for Kaae to do no work for at least two and a half years, and thus no reasonable accommodation would have allowed him to return to work.

The court also noted that usually the employee must initiate the process and must suggest the reasonable accommodation enabling him to perform essential job functions, which contemplates that the plaintiff has been released, or will soon be released, to return to work. And, here, Kaae conceded he had engaged in several interactive process communications with the District and was initially accommodated. But after, March 25,

11

2015, when Kaae was taken off all work, the school did not fail to engage in the interactive process because Kaae was on doctor's orders to do no work.

On that point, the trial court found *Nadaf-Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952 (*Nadaf-Rahrov*), instructive, noting that there the plaintiff's doctor had stated she could perform jobs other than her original position, and thus a reasonable fact finder could find she could have worked when she was terminated. Here, by contrast, Kaae's doctor's notes did not allow for the possibility of Kaae returning to any position with reasonable accommodations. The court noted an employer may be liable for failing to accommodate an employee only if the work could be modified to enable the employee to perform the essential functions.

The court also concluded that because it had found no discrimination, there was no failure to prevent discrimination under section 12940 subdivision (k).

## DISCUSSION

On appeal, Kaae challenges the entry of judgment for the District.

"We review the trial court's grant of summary judgment de novo." (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.) " 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Jimenez v. 24 Hour Fitness USA, Inc*. (2015) 237 Cal.App.4th 546, 553; see Code Civ. Proc., § 437c.)

### I

### *Section 12940, Subdivision (a)*

Kaae first contends the trial court erred in granting summary judgment as to his claim of disability discrimination under section 12940, subdivision (a). In support, he cites *Nadaf-Rahrov, supra,* 166 Cal.App.4th at page 969, a case where summary judgment was reversed as to several disability discrimination claims. Kaae maintains that

12

the trial court misread *Nadaf-Rahrov*, and that in fact his case involves the same circumstances and therefore the same outcome is warranted.

In *Nadaf-Rahrov,* the plaintiff worked as a clothes fitter for the defendant employer.  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 957.)  Between 1997 and 2003, the plaintiff experienced back and joint pain.  (*Ibid*.)  The plaintiff's doctor told her employer she needed accommodations, which the employer provided.  (*Ibid*.)  In November 2003, the plaintiff requested a month of family medical leave, with her doctor providing a " 'Certification of Health Care Provider' " that she was unable to perform any kind of work, and her condition would likely continue until January 2004.  (*Id*. at p. 958.)  The plaintiff was granted leave until December 2003.  (*Ibid*.)  Her doctor extended the leave each month, through March 5, 2004.  (*Ibid*.)  But back in January 2004, the plaintiff had written her employer that she could not return as a fitter and asked to be assigned another position.  (*Ibid*.)  The doctor also wrote the employer, confirming the disability and recommending a position " 'that would not involve bending, standing, or kneeling.' "  (*Ibid*.)  In February 2004, the plaintiff wrote her employer that she needed to be under her doctor's care " 'a little while longer,' " and was looking forward to letting them know as soon as her doctor released her.  (*Id.* at p. 959.)  The plaintiff's doctor however extended her medical leave four more times through August 16, 2004.  (*Ibid*.)  In the June extension, the doctor wrote, " 'I believe she may be able to return to work on 8/16/04 but not in her previous position.' "  (*Ibid*.)  On July 14, 2004, the employer fired the plaintiff.  (*Ibid*.)  The human resources manager explained that the plaintiff had not been released, and with her restrictions, was not qualified to perform any available position.  (*Ibid*.)

The plaintiff sued for claims including disability discrimination, and the trial court granted the employer summary judgment, finding the plaintiff could not prevail on her discrimination claims.  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 960.)

13

The appellate court reversed.  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 993.)  As to the section 12940, subdivision (a), which makes it unlawful for an employer to discriminate based on disability, the appellate court explained that it requires a showing that (1) the plaintiff was discharged because of a disability, and (2) the plaintiff could have performed the essential job functions with or without accommodation.  (*Id*. at p. 962.)  An employee satisfies the second prong by showing he or she can perform the essential functions of a vacant position with or without accommodation.  (*Id*. at p. 963.)  Conversely, the employer prevails by showing there is no triable issue of fact as to the plaintiff's ability, with or without accommodation, to perform the essential job functions of an available, non-promotion position.  (*Ibid*.)

For the *Nadaf-Rahrov* plaintiff, the first prong was undisputedly satisfied.  (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 963.)  As to the second, the appellate court found a triable issue of fact as to whether her doctor's medical certification and notes established she was unable to perform work when she was fired, or in the foreseeable future.  (*Id*. at p. 965.)  The court noted the doctor had stated that he intended the Certification of Health Care Provider to indicate only that the plaintiff could not work as a fitter—he had encouraged her to seek other work with her employer that " 'did not have the strenuous physical requirements of a fitter,' " and was willing to " 'discuss other options to accommodate her . . . .' "  (*Ibid*.)  The court also cited the plaintiff's testimony regarding her physical condition, noting that although her physical restrictions were substantial, "they did not self-evidently prevent [her] from performing any work whatsoever *with or without accommodation*."  (*Id*. at p. 967, original italics.)  Further, a declaration of the plaintiff's doctor stated she could do several available jobs of her employer because " 'they do not require kneeling and strenuous tasks with her fingers and hands which would affect her arthritic condition in the same manner as being a fitter.' "  (*Id*. at p. 968.)  Thus, the record did not establish that the plaintiff as a matter of law was unable to

perform work of any kind when she was fired, or in the foreseeable future. (*Id*. at pp. 965-966.)

Here, Kaae maintains the same circumstances are present. As to his section 12940, subdivision (a) claim, he avers the District unilaterally decided he was unable to perform any work, without further investigation, contacting his doctor, or providing a list of potential jobs, when dozens were available. He adds that he was ignored when he requested an accommodation, and his doctor was never told what positions were available and was therefore unable to evaluate his ability to do other work. Kaae maintains he could have worked with the doctor and the District to find a job he could perform with accommodations, and like in *Nadaf-Rahrov*, a reasonable fact finder could find he could have worked either at termination or in the foreseeable future. We, however, see a critical point of distinction.

In *Nadaf-Rahrov*, there was evidence the plaintiff's doctor believed her capable of performing jobs other than her original fitter position with reasonable accommodations. Here, the opposite was true. Kaae's doctor testified that Kaae could not perform any of the available District jobs with reasonable accommodations: "I don't think he could perform these with what I would consider to be reasonable accommodations."

And without evidence from the doctor that Kaae could perform an available position, we are left with Kaae's declaration that he, nevertheless, could have performed an available position. This is insufficient. A "plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) "We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Ibid*.)

15

On this record, we conclude the trial court properly determined there were no triable issues of material fact as to the section 12940, subdivision (a) claim.

II

*The Section 12940, Subdivision (m) Claim*

As to section 12940, subdivision (m)—which makes it unlawful "to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee,"—Kaae again maintains the same circumstances in *Nadaf-Rahrov* are present here.

The *Nadaf-Rahrov* court concluded that "an employer is liable under section 12940[, subdivision ](m) for failing to accommodate an employee only if the work environment could have been modified or adjusted in a manner that would have enabled the employee to perform the essential functions of the job." (*Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 975.) Thus, to prevail, "the plaintiff bears the burden of proving he or she was able to perform the essential functions of the job with accommodation." (*Id.* at p. 978.) And citing its conclusion as to the plaintiff's section 12940, subdivision (a) claim, the court found a triable issue of fact as to whether the employer failed to reasonably accommodate her by reassigning her to an available vacant position. (*Ibid.*)

Here, citing *Nadaf-Rahrov* and other authority, Kaae urges that it is the employer that must identify and provide reasonable accommodation, assessing both the job and the employee's limitations. To that, he argues that he twice requested an accommodation, but was never provided a reasonable accommodation. He also maintains he was able to perform some work, citing his doctor's deposition testimony: "I would have tried to work with the employer to reach some kind of verbiage in my note that would have allowed some kind of work" and "[i]t is not uncommon that I modify my restrictions either from 'off' to 'modified,' or even modify a weight or add a restriction about how a person can walk or stand after a discussion with either an employer or a work comp

16

company." The doctor's answers in this regard were to a hypothetical question untailored to the facts at hand.

It is not disputed that before Kaae was taken off work completely on March 25, 2015, he was provided accommodations by the District. After that date, the evidence is that Kaae was unable to perform any work. And as the *Nadaf-Rahrov* court explained, the plaintiff must prove he or she was able to perform the essential job functions with accommodation.

And what Kaae cites as evidence that he could perform some work is unavailing. The context shows the doctor was responding to a hypothetical question, and not testifying to Kaae's ability to perform the essential functions of an available position with accommodations. And were there any doubt as to that, it was put to rest by the doctor's unequivocal testimony that Kaae could not perform any available District positions with reasonable accommodations. (See *Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1227, fn. 11 ["when the undisputed evidence leads to only one conclusion as to the reasonableness of the accommodation sought, summary judgment is proper"].)

We therefore conclude summary judgment was properly granted as to the section 12940, subdivision (m) claim.

III

*The Section 12940, Subdivision (n) Claim*

As to his section 12940, subdivision (n) claim—which makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation"—Kaae again points us to *Nadaf-Rahrov*.

The *Nadaf-Rahrov* court concluded that a section 12940, subdivision (n) claim requires, "the availability of a reasonable accommodation (i.e., a modification or adjustment to the workplace that enables an employee to perform the essential functions

17

of the position held or desired) . . . ."  (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 983.)
The burden of proving available accommodation rests with the employee.  (*Id*. at p. 984.)

As to the *Nadaf-Rahrov* plaintiff, the court noted the employer's initial response to her request for reassignment was appropriate because she was then unable to work at all. (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 985.)  But after February 2004, when plaintiff made monthly calls to human resources, asking for another job, she was told her doctor must first release her before they could talk about another job.  (*Id*. at pp. 985-986.)  The employer, however, refused to provide a list of available jobs.  (*Id*. at p. 986.) And at one point, the plaintiff's doctor wrote a letter releasing her, just not for the same job, only to have the employer send the plaintiff back to her doctor to find out what date she could be released to work.  (*Ibid*.)  The *Nadaf-Rahrov* court explained, "[i]f the employer is responsible for a later breakdown in the process, it may be held liable."  (*Id*. at p. 985.)  And a reasonable jury could find the employer "caused a breakdown in the interactive process" by withholding information about available positions.  (*Id*. at p. 986.) Further, a jury could find it unreasonable to demand a medical release before reengaging in the interactive process, explaining a doctor might not want to release a patient for unspecified work without knowing its demands.  (*Ibid*.)

Here, Kaae argues that like in *Nadaf-Rahrov*, his doctor put him off work, and never affirmatively released him to work.  And also like in *Nadaf-Rahrov,* the District caused the breakdown of the interactive process in that he twice requested a reasonable accommodation but received no response.  The District also withheld information about its job openings.  He maintains that he could have performed some work if his doctor had been aware of the positions available.

Here, again there is no dispute that the District engaged in the interactive process with Kaae prior to March 25, 2015.  After that time, Kaae was taken off all work by his doctor.  Unlike in *Nadaf-Rahrov*, there were no entreaties by Kaae or his doctor to return to work with accommodations.  Kaae's argument that he twice requested to return to his

18

supervisor position is belied by the fact that his declaration mentions only that his request was denied in "March 2015." There is no indication Kaae communicated this request after March 25, 2015, when he was taken off work entirely. It is also belied by the doctor's testimony that Kaae was medically unable to perform any position, including the supervisor position, with reasonable accommodation after March 25, 2015.

Summary judgment was appropriately granted as to this claim.

IV

*Section 12940, Subdivision (k)*

As to section 12940, subdivision (k)—which makes it unlawful for an employer to "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring"—Kaae acknowledges that his subdivision (k) contention turns on the success of his subdivision (a), (m), and (n) contentions. Having found no disputed issues as to the those claims of discrimination, we accordingly find no disputed issue as to the District's failure to take reasonable steps to prevent discrimination.

The contention therefore fails.

V

*Retaliation for Whistleblowing Under Labor Code Section 1102.5*

As to his Labor Code section 1102.5 claim, Kaae contends a jury could find he was terminated for whistleblowing.

To resolve discrimination claims, California courts have employed—as the trial court did here—the three-stage *McDonnell Douglas* test. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2; *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 794 [36 L.Ed.2d 668, 673]; *Sillah v. Command International Security Services* (N.D. Cal. 2015) 154 F.Supp.3d 891, 916 ["Claims for wrongful termination in violation of public policy and for violation of California Labor Code § 1102.5 are evaluated under the burden

19

shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792"].) Under this test, "the employee must first establish a prima facie case of discrimination, showing ' " 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a [prohibited] discriminatory criterion . . . ." ' " ' " (*Reid* at p. 520, fn. 2.) "Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons." (*Ibid*.) "A reason is ' "legitimate" ' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.' " (*Ibid*., italics omitted.) "If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination." (*Ibid*.)

Here, the trial court found the District had met its initial burden by showing the supervisor position had been eliminated by the school board, and the duties absorbed by the superintendent; Kaae was issued a layoff notice as part of a reorganization plan. The court cited undisputed separate statements that the school board had directed the superintendent to undertake a staffing reorganization plan to free up more of the superintendent's time and allow him to assume additional responsibilities, including Kaae's supervisor responsibilities. And as to Kaae's maintenance position, Kaae had exhausted all his paid and unpaid leave by March 2016 and was moved to the rehire list, pursuant to Education Code section 45192, subdivision (g). The court went on to conclude that Kaae had failed to offer substantial evidence that the District's stated reason for the layoff were untrue, or that it had acted with discriminatory animus, noting that Kaae's supplemental and second supplemental briefs "touch on the issue of his termination, if at all, only in passing."

On appeal, Kaae challenges this ruling arguing that he had provided evidence that he had complained about drinking water safety at District schools, an analysis of the

drinking water system confirmed the danger, and "that the School District terminated him because of it." He avers that because of this, a jury could find he was terminated due to his whistleblowing.

As the trial court explained, Kaae satisfied his initial burden of establishing a prima facie case of discrimination. But after the District offered evidence that its action was motivated by legitimate, nondiscriminatory reason, Kaae then failed in his burden to show either the District's reasons were mere pretext or other evidence of intentional discrimination. As the trial court noted, Kaae offered no evidence of a link between the complaint of the drinking water in 2014 and the elimination of the supervisor position in 2016, nor did Kaae dispute that the supervisor position was eliminated as part of a school board directed reorganization plan.

Kaae, therefore, failed to show a disputed issue of fact as to retaliation for whistleblowing.

VI

*Section 12945.2*

Finally, as to his cause of action under section 12945.2, Kaae cites section 12945.2 subdivision (a)—which makes it unlawful for certain employers to refuse to grant an eligible employee leave for family care and medical care—and writes: "In 2016, Mr. Kaae requested CFRA [California's Family Rights Act] leave in order to continue his leave of absence. The employer refused his request. [Citation.] Mr. Kaae was eligible for leave. [Citation.] [¶] The employer has never provided any information or evidence that shows that Mr. Kaae was properly granted CFRA leave, or that he was not eligible for CFRA leave. Because of this, there is a material question of fact, and the Court should REVERSE the Trial Court."

The District responds that this claim was never alleged. Rather, in the second amended complaint, Kaae alleged that he was discharged because of his "request for and

21

use of California Family Leave," in violation of section 12945.2 subdivision (l)(1)  The District also notes that plaintiff wrote "undisputed," in response to the District's separate statement of undisputed facts that, "The tenth cause of action alleges discrimination/retaliation for taking leave under the California Family Leave[] Act."

The District is correct.  And because "[t]he complaint limits the issues to be addressed at the motion for summary judgment," Kaae cannot escape summary judgment on a cause of action he never alleged.  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258.)  To be sure, on "a motion for summary judgment, amendments to the pleadings are readily allowed," but, "it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself." (*Ibid.*)  Because Kaae has not done this, we have no cause to reverse the grant of summary judgment as to this claim.

DISPOSITION

The judgment is affirmed.  Kaae shall pay the District's costs on appeal.  (Cal. Rules of Court, rule 8.278.)


                                   _____

                                   HULL, Acting P. J.


We concur:



_____
MURRAY, J.



_____
DUARTE, J.